**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sarah Nathreen Nakanwagi,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Central Arizona Shelter Services Incorporated,<br><br>　　　　　Defendant. | No. CV-16-03935-PHX-DGC<br><br>**ORDER** |

Pro se Plaintiff Sarah Nathreen Nakanwagi filed a complaint against Defendant Central Arizona Shelter Services, Inc. ("CASS") seeking various forms of relief for an alleged violation of her state, federal, and international rights. Doc. 1. Defendant has filed a motion for summary judgment. Doc. 17. In response, Plaintiff has filed a motion for judgment on the pleadings. Doc. 25. Neither party has requested oral argument. For the reasons set forth below, the Court will grant Defendant's motion for summary judgment.

**I.　Legal Standard.**

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is also appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**II. Analysis.**

Plaintiff alleges that she was physically attacked by three CASS security guards while waiting to use the bathroom at a shelter.[1] She alleges physical and emotional injuries, and seeks a broad range of relief.

**A. Federal Law Claims.**

Plaintiff brings federal claims under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986, 1988, 3617, and 28 U.S.C. § 1350.

**1. Sections 1981, 1982, 1988.**

Section 1981 guarantees "[a]ll persons . . . the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 458 (2008). Plaintiff has not alleged any facts indicating that Defendant's conduct or the conduct of the security guards interfered with her ability to make or enforce a contract. As a result, the Court will grant summary judgment as to Plaintiff's § 1981 claims.

Section 1982 provides for the recovery of compensatory and punitive damages for individuals who suffer intentional discrimination in employment. Plaintiff does not allege that she was employed by Defendant or was discriminated against as an employee. Thus, the Court will grant summary judgment as to Plaintiff's § 1982 claims.

---

[1] Defendant disputes that Plaintiff was attacked by CASS security guards and that she was staying at a CASS facility. All facts will be viewed in the light most favorable to Plaintiff for purposes of this motion.

Section 1988 does not provide a cause of action, but allows for an award of attorneys' fees and expert fees.

**2.  Section 1983.**

"Section 1983 is a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials." *Naffe v. Frey*, 789 F.3d 1030, 1035 (9th Cir. 2015) (quotation marks and citation omitted). To state a claim under § 1983, a plaintiff must allege two distinct elements: (1) the violation of a right secured by the Constitution or laws of the United States, (2) by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Dismissal of a § 1983 claim "is proper if the complaint is devoid of factual allegations that give rise to a plausible inference of either element." *Naffe*, 789 F.3d at 1036.

A person acts under color of state law if he exercises "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49 (quotation marks omitted). This requirement generally limits § 1983 suits to claims against public officials. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful") (quotation marks and citation omitted). A private party may be found to have acted under color of state law if his "offending conduct is fairly attributable to the state." *Simeona v. United Airlines, Inc.*, 28 F.3d 108 (9th Cir. 1994) (citation and quotation marks omitted).

"The Supreme Court has articulated four tests for determining whether a private individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Franklin v. Fox*, 312 F.3d 423, 444-45 (9th Cir. 2002). Plaintiff has not alleged any connection between Defendant, the three CASS security guards, and the State. Rather, Plaintiff alleges that when a police officer arrived to the scene, "[h]e righted [the security guards'] unlawful and false arrest" and encouraged Plaintiff "to report" the incident. Doc. 1, ¶¶ 40, 42.

This allegation does not make the Defendant or the security guards state actors. As a result, Plaintiff has not established state action under the first three tests, and no claim can be brought against Defendant under § 1983 unless the security guards were performing a public function.

Under the public function test, a private individual is acting under color of state law if he carries out a function "both traditionally and exclusively governmental." *Lee v. Katz*, 276 F.3d 550, 554-55 (9th Cir. 2002). "Courts have held that though security guards exercise powers that are traditionally a public function, they do not act under color of state law because that function is not exclusively public." *Sayeg v. City of Anaheim*, No. 8:13-CV-02009-SVW-AN, 2015 WL 12734785, at *5 (C.D. Cal. June 17, 2015); *Wade v. Byles*, 83 F.3d 902, 905-06 (7th Cir. 1996); *Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 898 (7th Cir. 2004); *Stanley v. Goodwin*, 475 F. Supp. 2d 1026, 1039 (D. Haw. 2006), *aff'd*, 262 F. App'x 786 (9th Cir. 2007). The Sixth Circuit has noted that "[w]here private security guards are endowed by law with plenary police powers such that they are *de facto* police officers, they may qualify as state actors under the public function test." *Romanski v. Detroit Entm't, L.L.C.*, 428 F.3d 629, 637 (6th Cir. 2005). *Romanski* contrasted such broad authority with "the common law shopkeeper's privilege," where a security guard carries out no public function. *Id.* Plaintiff makes no allegation that the security guards in this case were endowed by the law with plenary powers that effectively made them *de facto* police officers. To the contrary, Plaintiff alleges that their actions were overruled by a true police officer. Because Plaintiff has presented no evidence that Defendant or the three security guards were acting under color of state law, the Court will grant summary judgment on her § 1983 claim.

### 3. Sections 1985, 1986.

"[T]o state a claim for conspiracy under § 1985, a plaintiff must first have a cognizable claim under § 1983." *Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 930 (9th Cir. 2004). Similarly, "a cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985." *Trerice v. Pedersen*, 769 F.2d 1398,

1403 (9th Cir. 1985). Because Plaintiff does not have a cognizable claim under § 1983, she does not have a cognizable claim under § 1985 or § 1986.

### 4. Section 3617.

Section 3617 is the Fair Housing Act's retaliation provision and provides that "[i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606 of this title." Plaintiff has not alleged any facts suggesting that Defendant retaliated against her for exercising a right guaranteed to her by the Fair Housing Act.

### 5. Additional Federal Claims.

Plaintiff brings claims under several criminal statutes, including as 18 U.S.C. §§ 112 and 2333. Plaintiff has not shown that she has a private right of action under these statutes. Plaintiff also alleges violations of various broad congressional acts such as the Civil Rights Act, the Fair Housing Act, the Patriot Act, the Violence Against Women Reauthorization Act of 2013, the Matthew Shepard and James Byrd Jr. Hate Crimes Prevention Act, and the Immigration and Nationality Act. But she provides no explanation of how these acts were violated, and no evidence to support any claim under these statutes.

### 6. Alien Tort Statute.

Invoking 28 U.S.C. § 1350, Plaintiff brings claims under the Alien Tort Statute ("ATS") for violations of international treaties. Doc. 1, ¶¶ 32-36. "[T]he ATS is a jurisdictional statute creating no new causes of action," but rather provides for federal courts to hear tort claims based on violations of international law. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004). Thus, a plaintiff has brought a proper claim under the ATS when she (1) is an alien, (2) suing for a tort, (3) committed in violation of international law. *Filartiga v. Pena-Irala*, 630 F.2d 876, 887 (2d Cir. 1980); *Aldana v.*

*Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1246 (11th Cir. 2005); *Kadic v. Karadzic*, 70 F.3d 232, 238 (2d Cir. 1995).

Not all violations of international law may be brought under the ATS, but only violations of those norms which are "specific, universal, and obligatory." *Kiobel v. Royal Dutch Petroleum Co.* (*Kiobel II)*, 133 S. Ct. 1659, 1665 (2013); *Doe I v. Nestle USA, Inc.*, 766 F.3d 1013, 1019 (9th Cir. 2014). The Supreme Court has emphasized that courts should exercise "great caution" in recognizing international norms as sufficiently "specific, universal, and obligatory" to give rise to a claim under the ATS. *Sosa*, 542 U.S. at 728. When recognizing such norms, courts must consider "whether international law extends the scope of liability for a violation of a given norm to the perpetrator being sued, if the defendant is a private actor such as a corporation or individual." *Sosa*, 542 U.S. at 733. Norms are generally applicable to non-state actors if they are "universal and absolute[.]" *Nestle USA*, 766 F.3d at 1022. "If international law supports state liability but not private liability, a private actor may still be liable if he or she 'acted under color of law.' In that regard, we are told to employ our 42 U.S.C. § 1983 jurisprudence in the inquiry." *Abdullahi v. Pfizer, Inc.*, 562 F.3d 163, 209 (2d Cir. 2009). Because Plaintiff has not shown that Defendant and the security guards were acting under color of state law for purposes of § 1983, she has not shown that they were acting under color of state law for purposes of liability under international law.

Plaintiff contends that several of her rights were violated under international law: (1) her right to be free of racial discrimination under the Convention on the Elimination of All Forms of Racial Discrimination ("CERD"); (2) her right to be free from torture under the Convention against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT"); (3) her right to be free from gender discrimination and violence under the Convention on the Elimination of All Forms of Discrimination against Women ("CEDAW"); (4) her rights under the Convention relating to the Status of Refugees and its 1967 Protocol ("Refugee Convention"); (5) her right to be free from "being treated as a slave" under the Slavery, Servitude, Forced Labour and Similar Institutions and

Practices Convention of 1926 ("Slavery Convention"); and (6) her rights to life, liberty, security of person, equal protection, and freedom from unlawful arrest under the International Covenant on Civil and Political Rights ("ICCPR"). Doc. 1, ¶¶ 32-36.

Recent federal court decisions regarding ATS claims have focused mostly on the application of the statute to extraterritorial acts and corporate defendants. Few cases have dealt with application of ATS to domestic acts committed within the United States. At least one court has found the application of ATS in such circumstances to be improper, noting that a contrary conclusion would mean that "every encounter of an alien with a police officer w[ould] become not just a 'federal case,' but an 'international case.'" *Lopez v. Richardson*, 647 F. Supp. 2d 1356, 1364 (N.D. Ga. 2009). As the *Lopez* court noted, however, there is "nothing in the language of the Alien Tort Statute that precludes its use against domestic U.S. actors[.]" *Id.* at 1363-64. The Court need not decide this issue, as Plaintiff has not alleged a violation of an international norm which is "specific, universal, and obligatory." *Kiobel II*, 133 S. Ct. at 1665.

"Racial discrimination is a violation of customary law when it is practiced systematically as a matter of state policy." Restatement (Third) of Foreign Relations Law § 702 (1987); *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 717 (9th Cir. 1992) (relying on the Restatement to assert that *jus cogen* norms prohibit systematic racial discrimination). Similarly, "freedom from gender discrimination as state policy, in many matters, may [] be a principle of customary international law." *Id.* A single incident of racial or gender discrimination by private individuals – while certainly serious and unacceptable – does not constitute a violation of a "specific, universal, and obligatory" international norm. *Kiobel II*, 133 S. Ct. at 1665. Civil remedies for such a violation are better sought under state tort law. What is more, the Ninth Circuit has found that the "international norm prohibiting systematic racial discrimination is [not] sufficiently specific and obligatory to give rise to a cause of action under the ATS." *Sarei v. Rio Tinto, PLC*, 671 F.3d 736, 768 (9th Cir. 2011), *vacated on other grounds*, 133 S. Ct. 1995, 185 L. Ed. 2d 863 (2013).

Similarly, "torture and summary execution – when not perpetrated in the course of genocide or war crimes – are proscribed by international law only when committed by state officials or under color of law." *Kadic*, 70 F.3d at 243; *Sosa*, 542 U.S. at 732 n.20 (citing with approval *Kadic*'s finding of an insufficient consensus that torture by private actors violates international law). Because Plaintiff has not alleged any state action, she has not alleged a violation of international law norms regarding torture.

With regard to Plaintiff's allegations of her rights to life, liberty, security of person, equal protection, and freedom from unlawful arrest, Plaintiff has not alleged any facts that would support a violation of her right to life. Any equal protection claim fails for the same reasons that her claims of discrimination fail. Moreover, the Supreme Court has held that "a single illegal detention of less than a day . . . violates no norm of customary international law so well defined as to support the creation of a federal remedy." *Sosa*, 542 U.S. at 728. Rather, "arbitrary detention violates customary law if it is prolonged and practiced as state policy." Restatement (Third) of Foreign Relations Law § 702 (1987). Here, Plaintiff alleges that she was detained by the security guards only until the police arrived, at which point the police removed her handcuffs, told her she was not under arrest, and encouraged her to report the alleged conduct of the security guards. Doc. 1, ¶¶ 40-42. This single brief detention by private actors does not constitute a violation of international law regarding liberty and unlawful arrest. Additionally, courts have repeatedly held that liberty and security claims are not sufficiently "specific, universal, and obligatory" to constitute actionable claims under the ATS. *See Bowoto v. Chevron Corp.*, 557 F. Supp. 2d 1080, 1095 (N.D. Cal. 2008), aff'd, 621 F.3d 1116 (9th Cir. 2010).

Finally, Plaintiff has not alleged facts that would constitute a violation of the Refugee Convention or Slavery Convention, assuming the provisions of these treaties reflect "specific, universal, and obligatory" international law norms. The Court will grant summary judgment as to Plaintiff's ATS claims.

### B. State Law Claims.

Plaintiff also brings various state tort claims. Doc. 1. The federal supplemental jurisdiction statute provides that the Court may decline to exercise supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367; *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). Because the Court has granted summary judgment for Defendant as to all of Plaintiff's federal claims, the Court will also exercise its discretion and dismiss Plaintiff's state law claims.[2]

**IT IS ORDERED:**

1. Defendant's motion for summary judgment (Doc. 17) is **granted** as to Plaintiff's federal law claims.
2. Plaintiff's motion for judgment on the pleadings (Doc. 25) is **denied.**
3. Plaintiff's remaining state law claims are dismissed without prejudice.
4. The **Clerk** is directed to **terminate** this action.

Dated this 30th day of May, 2017.

*David G. Campbell*
David G. Campbell
United States District Judge

---

[2] The court's jurisdiction over this case was based on federal question jurisdiction. Doc. 1, ¶¶ 1-2. Plaintiff concedes that she is domiciled in Arizona and that Defendant is an Arizona corporation, removing any possibility of diversity jurisdiction.